**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| TIMOTHY BLACKMAN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2:26-cv-85 |
| CHARGEPOINT, INC., a Delaware corporation, | ) ) ) | JURY TRIAL DEMANDED |
| Defendant. | ) ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Timothy Blackman, individually and on behalf of all others similarly situated, through his undersigned counsel, alleges the following against Defendant, ChargePoint, Inc., based upon personal knowledge as to himself and information and belief as to all other matters.

### INTRODUCTION

1.     This action is brought by Plaintiff individually and on behalf of the class of individuals who paid to charge their vehicles at ChargePoint electric vehicle ("EV") charging stations that were malfunctioning or inoperative.

2.     After paying to use a ChargePoint EV charging station, Plaintiff and others like him discovered that the charging station was malfunctioning or inoperable, causing them to lose their money or depriving them of the use of their money while they waited for refunds.

3.     Based on the foregoing, Plaintiff seeks classwide relief for breach of contract, breach of the implied warranty of merchantability, violation of the Indiana Deceptive Consumer Sales Act and unjust enrichment.

**PARTIES**

4.      Plaintiff, Timothy Blackman, is a natural person residing in and a citizen of Harvey, Illinois. Plaintiff is a member of the class of persons defined herein.

5.      Defendant, ChargePoint, Inc. ("ChargePoint"), is a corporation organized under the laws of the State of Delaware with its principal place of business in Campbell, California. At all times relevant hereto, ChargePoint deploys, maintains and operates EV charging stations throughout the United States, including Indiana.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) because (a) there are 100 or more class members, (b) at least one class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the aggregate matter in controversy exceeds $5,000,000, exclusive of interest and costs.

7.      This Court has personal jurisdiction over ChargePoint because this suit arises out of or relates to Defendant's contacts with the State of Indiana, including its deployment, maintenance and operation of EV charging stations throughout the State of Indiana that accepted payment from Plaintiff and class members despite being malfunctioning or inoperable, causing them loss.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Specifically, Plaintiff and other members of the class paid to use the ChargePoint EV charging stations located within this District in Highland, Indiana.

**FACTUAL ALLEGATIONS**

9.      ChargePoint operates one of the largest EV charging networks in the United States, which includes approximately 135 stations in Indiana.

10.      Once at the station, a charging session can be started by tapping a ChargePoint RFID card, using the mobile app, tapping a contactless credit or debit card at supported stations, or in some cases through a vehicle's built-in Plug & Charge capability.

11.      After activation, the driver plugs the connector into the vehicle, and the station communicates with the car to begin delivering electricity.

12.      Payment depends on how the session is initiated. If the driver uses the ChargePoint app or RFID card, the cost is billed to the credit or debit card linked to their account, and a receipt is provided digitally at the end of the session. If a contactless bank card is used directly at the station, the system first places a temporary authorization hold—similar to a gas station pre-authorization—which is later adjusted to reflect the final charging cost.

13.      ChargePoint chargers are network-connected, allowing the company to see session details in real time, remotely restart equipment and to process billing adjustments, including refunds, when necessary.

14.      Notwithstanding the above-described connectivity of ChargePoint charges, drivers are often charged even when a station is malfunctioning or inoperable. Even at these stations, drivers can be charged, requiring them to request a refund from ChargePoint by calling a toll-free number.

15.      Refunds for broken charging stations are not automatic. Some drivers are successful at obtaining refunds, while others are not.

16.      However, even when a full refund is issued, drivers are deprived of the use of the

monies they paid to use a broken charging station while a refund is processed, which is typically five to seven business days.

### Plaintiff's Experience

17. On or about January 23, 2026, Plaintiff attempted to charge his EV using a ChargePoint EV charging station located at 9236 Indianapolis Boulevard in Highland, Indiana.

18. Plaintiff made two payments of $50.00 to charge his EV using the above charging station using his Apple Cash account.

19. At the time of the transaction, ChargePoint debited Plaintiff's Apple Cash account for two $50.00 transactions for a total of $100.00.

20. After Plaintiff's account was debited by ChargePoint, he discovered that the charging station was malfunctioning and could not charge his vehicle. However, there was no signage or other indication that the charging station was not working.

21. Plaintiff then called ChargePoint's toll-free customer service telephone number to complain about the malfunctioning charging station and to request a refund.

22. During the above telephone call, ChargePoint acknowledged that the charging station Plaintiff attempted to use was not working and agreed to refund his money within five to seven business days.

23. Plaintiff demanded that his money be refunded immediately, as he needed the money in his Apple Cash account for other purposes and could not wait five to seven business days. ChargePoint refused and stated that an immediate refund was not possible.

24. Thereafter, on about January 30, 2026, and January 31, 2026, Plaintiff received a refund for each of the $50.00 transactions described above. In the interim, however, he was deprived of the use of the $100.00 debited from his account. When a refund was finally processed,

it did not include any additional amounts for interest or the transaction fees he incurred to access the funds in his Apple Cash wallet.

25.    Thus, despite failing to provide Plaintiff with the charging services he paid for, Plaintiff sustained a loss for which he seeks compensation on behalf of himself and the Class defined below.

## CLASS ACTION ALLEGATIONS

26.    This action is brought and may be properly maintained as a class action pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

27.    Plaintiff brings this action individually and on behalf of the following class, including an Indiana Subclass defined as follows (the "Class"):

> All individuals who paid to charge their vehicles at a ChargePoint EV charging station that was malfunctioning or inoperable but who did not receive an immediate refund to their original form of payment or who received no refund at all.

### Indiana Subclass

> All individuals who paid to charge their vehicles at a ChargePoint EV charging station located in Indiana that was malfunctioning or inoperable but who did not receive an immediate refund to their original form of payment or who received no refund at all.

Excluded from the Class are Defendant, their respective affiliates, parents, subsidiaries, officers, agents, directors, the judge(s) presiding over this matter, and the clerks of said judge(s).

28.    Plaintiff reserves the right to amend the above definition or to propose other or additional classes in subsequent pleadings and/or motions for class certification.

29.    Plaintiff is a member of the Class and Indiana Subclass.

30.    This action seeks both injunctive relief and damages.

31.    This case satisfies each of the following requirements for class certification set forth

in Fed. R. Civ. P. 23.

32.    *Numerosity.* The class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). As of January 31, 2025, ChargePoint powered over 342,000 active charging ports, serving more than 750,000 active EV drivers monthly. Given the scale of ChargePoint's operations, and the common occurrence of malfunctioning and inoperable charging stations, there are potentially thousands or tens of thousands of persons in the class making individual joinder impracticable.

33.    *Commonality.* There are questions of law or fact common to the Class, Fed. R. Civ. P. 23(a)(2), including, *inter alia*, the following:

a.    Whether ChargePoint accepts payment for the use of its EV charging stations that are malfunctioning or inoperable;

b.    Whether ChargePoint fails to provide immediate refunds to individuals who pay for a charging session using one of its EV charging stations that is malfunctioning or inoperable;

c.    Whether ChargePoint is able to determine which of its EV charging stations are malfunctioning or inoperable;

d.    Whether ChargePoint alerts users of its EV charging stations when they are malfunctioning or inoperable; and

e.    Whether Plaintiff and the Class have been injured by ChargePoint's practices alleged herein and the appropriate measure of their damages.

34.    The foregoing questions satisfy commonality because the same evidence will suffice for each member to make a *prima facie* showing on the question or the issue is susceptible to generalized, class-wide proof, and determination of the question's truth or falsity will resolve

an issue that is central to the validity of each one of their claims.

35.     Each Class member's claim depends upon a common contention, including, *inter alia*, that they paid to use a ChargePoint EV charging station that they later discovered was malfunctioning or inoperable, causing them to lose their money or depriving them of the use of their money while they waited for refunds.

36.     *Typicality.* The claims of Plaintiff are typical of the claims of the Class. *See* Fed. R Civ. P. 23(a)(3). This case satisfies typicality for the same or similar reasons set forth above with respect to commonality.

37.     Plaintiff's claim has the same essential characteristics as the claims of the Class at large.

38.     *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. Fed. R. Civ 23(a)(4). Plaintiff has retained counsel who are competent and experienced in class action litigation on behalf of consumers. Further, Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the Class.

39.     *Predominance*. The questions of law or fact set forth herein predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). The Class is sufficiently cohesive to warrant adjudication by representation, and the common questions set forth herein represent a significant aspect of the case, as explained above.

40.     *Superiority.*  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy within the meaning of Fed. R. Civ. P. 23(b)(3). This is demonstrated the likelihood that any class members would want to maintain individual actions given the relatively small amounts at stake and the difficulty of obtaining counsel willing to pursue such relatively low value claims; the apparent lack of any such litigation having already been

initiated; the desirability of concentrating the litigation of such claims in this Court as opposed to several courts hearing the same claim in different jurisdictions without coordination; and the lack of any apparent difficulties in the Court's management of the case before it as a class action.

41.     ***Classwide Injunctive Relief.*** In addition to satisfying the requirements of Fed. R. Civ. P. 23(b)(3), *supra*, this case satisfies the injunctive relief requirements of Fed. R. Civ. P. 23(b)(2), which requires a showing that the party opposing the class (Defendant) has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

42.     As alleged, after paying to use a ChargePoint EV charging station, Plaintiff and others like him discovered that the charging station was malfunctioning or inoperable, causing them to lose their money or depriving them of the use of their money while they waited for refunds. ChargePoint's practice of denying or delaying refunds for non-working EV charging stations is generally applicable to the Class as a whole, thereby making appropriate final injunctive or equitable relief on a class-wide basis.

**CAUSES OF ACTION**

**COUNT I**

**(Breach of Contract)**

43.     Plaintiff repeats and realleges the foregoing allegations as though fully stated herein. This count is pled in the alternative to Count III (Unjust Enrichment), *infra*.

44.     At all times relevant hereto there was a contract between Plaintiff and the Class on the one hand and Defendant on the other for the provision of EV charging services using ChargePoint charging stations.

45. Under the terms of the foregoing contract, ChargePoint was required to provide vehicle charging services to Plaintiff and the Class using ChargePoint's EV charging stations in exchange for payment in the amounts determined by ChargePoint for their use.

46. Notwithstanding the fact that Plaintiff and the Class performed all of the material terms they were required to under the above contract, ChargePoint failed to provide them with the promised EV charging services as its charging stations were malfunctioning or inoperable.

47. As a direct and proximate result of the foregoing breach, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## COUNT II

**(Violation of the Indiana Deceptive Consumer Sales Act, IN Code § 24-5-0.5-1 *et seq.*)**

48. Plaintiff repeats and realleges the foregoing allegations as though fully stated herein.

49. Plaintiff brings this Count individually and on behalf of the Indiana Subclass defined herein.

50. The purposes and policies of the Indiana Deceptive Consumer Sales Act (the "DCSA"), Indiana Code § 24-5-0.5-1 to -12, are to:

 (1) simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

 (2) protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and

 (3) encourage the development of fair consumer sales practices.

Ind. Code § 24-5-0.5-1(b).

51. The General Assembly has instructed courts to construe the DCSA liberally to

promote these purposes and policies. Ind. Code § 24-5-0.5-1(a)

52.    ChagePoint is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, *services*, and intangibles that are primarily for a personal, familial, or household purpose, such as the EV charging services ChargePoint provides. Ind. Code § 24-5-0.5-2(1), (3) (emphasis added).

53.    The DCSA provides that "[a] supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of [the DCSA] whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." Ind. Code § 24-5-0.5-3(a).

54.    An "incurable deceptive act" is a "deceptive act done by a supplier as part of a scheme, artifice, or device with the intent to defraud or mislead. Ind. Code § 24-5-0.5-2(a)(8).

55.    ChargePoint committed deceptive acts, including but not limited to the following:

  a.    Accepting payment from Plaintiff and the Indiana Subclass for EV charging services it knew it could not provide;

  b.    Omitting to disclose to Plaintiff and the Indiana Subclass that its EV charging stations were malfunctioning or inoperable;

  c.    Misleading Plaintiff and the Indiana Subclass regarding the availability of EV charging services at charging stations that were malfunctioning or inoperable.

56.    ChargePoint's violations of Section 3(b) set forth above were willful and were done as part of a scheme, artifice, or device with intent to defraud or mislead, and therefore are incurable

deceptive acts under the DCSA.

57.     The DCSA provides that "[a] person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (i) three (3) times the actual damages of the consumer suffering the loss; or (ii) one thousand dollars ($1,000). Ind. Code § 24-5-0.5-4(a).

58.     The DCSA further provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member  and which has been damaged by such deceptive act, subject to and under the Indiana Rules of Trial Procedure governing class actions . . . ." Ind. Code § 24-5-0.5-4(b).

59.     Had Plaintiff and the Indiana Subclass been aware that the ChargePoint EV charging stations they attempted to use were malfunctioning or inoperable, they would not have paid for such services.

60.     As a direct and proximate result of ChargePoint's unfair and deceptive acts and practices in violation of the DCSA, Plaintiff and the Indiana Subclass have suffered damages in an amount to be proven at trial.

## COUNT III

### (Unjust Enrichment)

61.     Plaintiff repeats and realleges the foregoing allegations as though fully stated herein. This count is pled in the alternative to Count I (Breach of Contract), *supra*.

62.    Plaintiff and the Class rendered a measurable benefit to ChargePoint at its express or implied request by virtue of paying for its EV services described herein.

63.    Plaintiff and the Class expected payment from ChargePoint in the form of provision of EV charging services at ChargePoint charging stations.

64.    Allowing ChargePoint to retain the benefit of Plaintiff and the Class' payments, including the loss of the use of the funds while they are awaiting refunds, without restitution would be unjust as it did not provide them with the EV charging services they paid for.

65.    As a direct and proximate result of the foregoing, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

### PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

A.    Certifying that Class as requested herein, appointing the named Plaintiff as Class representative and the undersigned counsel as Class counsel;

B.    Requiring that Defendant pay for notifying the members of the Class of the pendency of this suit;

C.    Awarding Plaintiff and the Class appropriate monetary relief, including their actual damages, statutory damages, treble damages, restitution and disgorgement;

D.    Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief sufficient to prevent Defendant from continuing to collect payment for EV charging services at malfunctioning or inoperable ChargePoint stations;

E.    Awarding Plaintiff and the Class prejudgment and post-judgment interest to

the maximum extent allowable;

   F. Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowed, together with their costs and disbursements of this action; and

   G. Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## JURY DEMAND

  Plaintiff hereby demands a trial by jury on all issues so triable.

Date: March 3, 2026       Respectfully submitted,

              TIMOTHY BLACKMAN

          By:  /s/ William M. Sweetnam
              One of His Attorneys

              William M. Sweetnam
              SWEETNAM LLC
              230 Northgate Street, Suite 103
              Lake Forest, Illinois 60045
              (847) 877-2970
              wms@sweetnamllc.com

              *Attorney for Plaintiff and the Class*