UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

TIMOTHY BLACKMAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CHARGEPOINT, INC.,

Defendant.

Case No. 2:26-CV-085-GSL-APR

**OPINION AND ORDER**

This matter is before the Court on the Motion to Dismiss Plaintiffs' Class Action Complaint [DE 11] filed by Defendant, ChargePoint, Inc. ("ChargePoint"), on April 27, 2026. Plaintiff, Timothy Blackman, responded [DE 20] on June 1, 2026, and ChargePoint filed its reply [DE 21] on June 15, 2026. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

ChargePoint is a Delaware corporation with its principal place of business in California. [DE 1 at ¶5]. ChargePoint deploys, maintains and operates EV charging stations[1] throughout the United States including 135 stations located in Indiana. [*Id.*]. To begin a charging session at one of ChargePoint's stations, a customer can either tap a "ChargePoint RFID card" using the mobile app which is billed to the credit or debit card linked to the consumer's ChargePoint account, tap a contactless credit or debit card, or in some cases, through a vehicle's built-in Plug & Charge capability. [*Id*. at ¶¶ 10, 12]. If the customer chooses to use their debit or credit card, a temporary authorization hold is employed which is then adjusted to reflect the final charging cost at the end

[1] An "EV charging station" is a charging station for electric vehicles available to the public. *Electric Vehicle Charging Stations*, U.S. DEP'T OF ENERGY, https://afdc.energy.gov/fuels/electricity-stations (last visited Aug. 25, 2026).

of the charging session. [*Id.* at ¶ 12]. After payment is completed, the driver plugs the connector from the EV charging station into their vehicle to begin the charging process. [*Id.* at ¶ 11].

Plaintiff, an Illinois resident, attempted to charge his electric vehicle at a ChargePoint EV station in Highland, Indiana on January 23, 2026. [DE 1 at ¶ 17]. Plaintiff made two payments of $50.00 using his Apple Cash account. [*Id.* at ¶¶ 18-19]. After Plaintiff's Apple Cash Account had been charged two times, he discovered that the charging station had malfunctioned and was not able to charge his vehicle. [*Id.* at ¶ 20]. There was no signage or other indication that the charging station was not working. [*Id.*]. He called ChargePoint's customer service phone number to complain about the malfunctioning, and to request a refund. [*Id.* at ¶ 21]. During the phone call, ChargePoint acknowledged that the charging station that Plaintiff had attempted to use was not working and agreed to refund him his money within five to seven business days. [*Id.* at ¶ 22]. Plaintiff demanded his money be refunded immediately to which ChargePoint explained was not possible. [*Id.* at ¶ 23]. Plaintiff's money was fully refunded on January 30, 2026, and January 31, 2026. [*Id.* at ¶ 24]. The refund did not include any additional amounts for interest or transaction fees that Plaintiff incurred. [*Id.*].

As a result of the above-described events, Plaintiff filed this lawsuit on behalf of himself and the following class of individuals, including an Indiana Subclass ("Class"):

> All individuals who paid to charge their vehicles at a ChargePoint EV charging station that was malfunctioning or inoperable but who did not receive an immediate refund to their original form of payment or who received no refund at all.
>
> Indiana Subclass
>
> All individuals who paid to charge their vehicles at a ChargePoint EV charging station located in Indiana that was malfunctioning or inoperable but who did

> not receive an immediate refund to their original form of payment or who received no refund at all.

[DE 1 at ¶ 27]. He alleges the following three claims against ChargePoint: Breach of Contract (Count I), violation of the Indiana Deceptive Consumer Sales Act (DCSA), IND. CODE § 24-5-0.5-1 *et seq*. (Count II), and Unjust Enrichment (Count III). *See generally* [DE 1]. In his prayer for relief, Plaintiff has requested, *inter alia*, that the Court certify the Class requested therein, naming him Class representative. [*Id*. at pg. 12]. In lieu of answering the Complaint, ChargePoint filed the instant motion to dismiss. [DE 11].

**LEGAL STANDARD**

A plaintiff survives a Rule 12(b)(6) motion to dismiss when "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When examining a motion to dismiss, [a court] will accept as true all well-pleaded facts in the complaint and draw reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022) (citation omitted). "But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

**DISCUSSION**

*A. Count I - Breach of Contract*

Count I alleges that a contract existed between Plaintiff and ChargePoint "for the provision of EV charging services." [DE 1 at ¶ 44]. Plaintiff alleges that "[u]nder the terms of the [] contract,

ChargePoint was required to provide vehicle charging services to Plaintiff and the Class … in exchange for payment in amounts determined by ChargePoint[.]" [Id. at ¶ 45]. However, Plaintiff claims that after he, and other members of the Class, performed all the "material terms [] under the [] contract, ChargePoint failed to provide them with the promised EV charging services as its charging stations were malfunctioning or inoperable." [*Id*. at ¶ 46]. As a result, Plaintiff incurred damages, namely "the deprived … use of the $100.00 debited from his [Apple Cash] account." [*Id*. at ¶ 24].

ChargePoint argues that Plaintiff's breach of contract claim fails for several reasons. First, it claims that Plaintiff has failed to plausibly allege a breach because the Complaint fails to specify what contractual provision ChargePoint allegedly violated. Alternatively, ChargePoint contends that the contract that does control is "the Non-ChargePoint Account Version of the Terms of Service" and its very terms affirmatively foreclose Plaintiff's claim. Finally, ChargePoint claims that Plaintiff has failed to sufficiently allege any cognizable damages.

District courts within the Seventh Circuit have differing views on whether a complaint must state the provision of the contract that allegedly was violated to plausibly state a claim for breach of contract. *See Peerless Network, Inc. v. MCI Comm. Servs., Inc.*, No. 14 C 7417, 2015 WL 2455128, at *5 (N.D. Ill. May 21, 2015) (concluding plaintiffs need not allege a violation of a specific provision to state a claim); *Jones v. Int'l Ass'n of Bridge Structural Ornamental and Reinforcing Iron Workers*, 864 F. Supp. 2d 760, 772 (E.D. Wis. 2012) (holding that a "plaintiff is not required to identify a specific contract provision that was breached in order to plead breach of contract under the federal pleading standard"). However, courts in this district have held that the complaint must identify the contractual provision allegedly breached. *See Tsitsopoulou v. Univ. of Notre Dame*, 2011 WL 839669, at *5 (N.D. Ind. Mar. 7, 2011). Instead of addressing whether the

contractual provision at issue must be explicitly pled in the complaint, Plaintiff contends that the breach of contract claim here is "not for breach of express contract, and so there is no written provision that he needs to identify." [DE 20 at 13]. He argues that the contract is "implied-in-fact." [*Id*. at 11].

The Court finds Plaintiff's argument unpersuasive. The breach of contract claim makes no mention nor gives any indication that an implied-in-fact contract existed between the parties or, more importantly, that it is the contract at issue in Count I. *See generally* [DE 1]. In fact, the allegations of the Complaint suggest the opposite. [*Id*.]. The allegations include language such as the "*provision* of EV charging services", "[u]nder the *terms* of the foregoing contract", "all of the *material terms*." [*Id*. at ¶¶ 44-46] (emphasis added). Even while drawing all inferences in favor of Plaintiff, it would be contrary to law to find that the allegations of the Complaint give ChargePoint "fair notice" that Count I involves the breach an implied-in-fact contract. See *Twombly,* 550 U.S. at 555.

Since the Complaint suggests that the contract at issue was express, the relevant inquiry is whether the allegations contained in Count I sufficiently satisfy the pleading standard as laid out in *Twombly* and Federal Rule of Civil Procedure 8. *See* 550 U.S. at 570; Fed. R. Civ. Pro 8. The Complaint alleges that a contract existed between the parties for the "provision" of charging services. [DE 1 at ¶ 44]. Plaintiff further alleges that the "terms of the [] contract" required ChargePoint to perform the charging services in exchange for payment. [*Id*. at ¶ 45]. However, Plaintiff claims that ChargePoint breached the "contract" when it failed to deliver the charging services after Plaintiff had provided payment. [*Id*. at ¶¶ 46-47]. ChargePoint is arguing that this claim fails because Plaintiff has not specified what "provision" of the express contract was breached. Whether this is a requirement is not a settled issue within the Seventh Circuit, however

this Court is inclined to follow the courts within this District in finding that the identification of the breached provision is necessary here. *See Tsitsopoulou*, 2011 WL 839669, at *5. This is significant given the fact that the contract in which ChargePoint claims is at issue here – Non-ChargePoint Account Version of the Terms of Service – has a choice of law provision that would require this Court to apply California law. [DE 12-1 at 9]. Plaintiff does not provide a position on whether the breached provision should be specifically alleged when an express contract is at issue. For these reasons, the Court finds that Plaintiff has failed to state a claim for breach of contract. Additionally, since the claim fails for this reason, the Court need not address the issue of damages at this time.

*B. Count II – Violation of IDCSA*

Count II of the Complaint alleges that ChargePoint violated the IDCSA when it willfully, and as part of a scheme, artifice, or device with intent to defraud or mislead, accepted payment from Plaintiff, and the Class, for EV charging services that it knew it could not provide; omitted to disclose to Plaintiff, and the Class, that its EV charging stations were malfunctioning or inoperable; and, mislead Plaintiff, and the Class, regarding the availability of the EV charging services at charging stations that were malfunctioning or inoperable. [DE 1 at ¶¶ 55-56]. The remainder of the allegations of Count II contain various definitions and provisions of the IDSCA. *See generally* [*Id*. at ¶¶ 48-60].

ChargePoint argues that Count II fails to allege sufficient facts to plead a fraudulent scheme under Rules 12(b)(6) and 9(b), and that Plaintiff fails to allege that any of the challenged conduct constituted a "deceptive act" within the meaning of the IDSCA. Plaintiff acknowledges that he must satisfy the heightened Rule 9(b) pleading requirements, but argues that he fulfilled them because the Complaint alleges the entity who made the misrepresentation: ChargePoint; the time

and place of the misrepresentation: January 23, 2026 in Highland, Indiana; the content of the misrepresentation: "no signage or other indication that the charging station was not working"; and, the method by which the misrepresentation was communicated to Plaintiff: "observing in person the lack of signage or other indication that the charging station was not working". [DE 20 at 18-19]. As for pleading facts sufficient to show ChargePoint intended to defraud or mislead, Plaintiff claims that Rule 9 only requires a general allegation of "intent to defraud or mislead" and that is satisfied here by inferring that "ChargePoint c[ould] detect a service interruption (via connected chargers), did detect a service interruption (a corollary to state of mind), and willfully chose (a condition of a person's mind) to keep collecting money as part of scheme." [*Id*. at 21].

Plaintiff's position that a *general* allegation of fraud or deceit is sufficient for Rule 9(b)'s heightened pleading requirements is incorrect. Under this standard, the pleader must "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), which includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff," *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (internal quotation marks omitted). The Seventh Circuit has noted that "[b]y requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta*, 761 F.3d at 738 (quoting *Ackerman v. Nw. Mut. Life. Ins. Co.*, 172 F.3d 467, 469–70 (7th Cir. 1999)). While it's true that the degree of particularity may vary with the facts at issue, "sparse allegations" as Plaintiff has pled, will not suffice. *See Id.* at 737–38; *cf. id.* at 737 ("We do not require that Camasta provide the precise date, time, and location that he saw the advertisement or every word

that was included on it, but something more than Camasta's assertion that 'merchandise was offered at "sale prices"' is needed"). Plaintiff's general allegation that ChargePoint knew that the station was malfunctioning, based a phone call to customer service *after* the machine malfunctioned, is not of the "responsible and supported" charge of fraud that Rule 9(b) requires. Additionally, Plaintiff's claim that ChargePoint continued to collect money by fraudulent means after January 23, 2026, as part of the scheme is void of any supporting facts. For these reasons, Count II fails to state a claim.

*C. Count III – Unjust Enrichment*

Plaintiff pleads Count III, a claim for unjust enrichment, in the alternative to Count I – breach of contract. The allegations include that Plaintiff, and the Class, rendered measurable benefit to ChargePoint "at its express or implied request" when it paid for its EV charging services. [DE 1 at ¶ 62]. Plaintiff, and then the Class, expected payment in the form of charging services in return. [*Id*. at ¶ 63]. Therefore, since Plaintiff, and the Class, did not receive the charging services due to the malfunctioning of the charging station, allowing ChargePoint to retain his payment, including the loss of the use of the funds while waiting for refunds would be unjust. [*Id*. at ¶ 64].

ChargePoint argues that Plaintiff cannot maintain a claim for unjust enrichment because of the existence of the express contract, as pled in Count I, forecloses such a claim. ChargePoint also argues that Count III fails because it did not unjustly retain a benefit since the allegations of the Complaint concede that Plaintiff received a full refund. *See* [DE 12 at 20-21]. Plaintiff argues that the unjust enrichment claim is pled in the alternative to the breach of contract claim and relies on *Peterson v. McGladrey & Pullen, LLP*, 676 F.3d 594 (7th Cir. 2012) in support. [DE 20 at 27]. There, the Seventh Circuit explained that "there's no rule against inconsistent pleadings in different suits, or for that matter a single suit." *Peterson*, 676 F.3d at 597.

The Court agrees that Rule 8(d) permits inconsistent pleading. *See* Fed. R. Civ. P. 8(d)(3) (stating that "a party may state as many separate claims or defenses as it has, regardless of consistency"). However, here, both parties agree a contract exists, and the allegations of the Complaint, as discussed above, suggest the contract was express. Therefore, "where there is a specific contract that governs the relationship of the parties, the doctrine [of unjust enrichment] has no application." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 742 (7th Cir. 2017); *Browne v. Ciobanu*, 2025 WL 619152, at *8 (N.D. Ind. Feb. 25, 2025), *aff'd*, 2025 WL 3496211 (7th Cir. Dec. 5, 2025). Accordingly, Count III fails to state a claim for unjust enrichment.[2]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** ChargePoint's Motion to Dismiss [DE 11]. The Complaint [DE 1] is **DISMISSED without prejudice**. Plaintiff has until **September 30, 2026,** to file an amended complaint. Failure to do so will result in the closure of this case.

SO ORDERED.

ENTERED: September 1, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court

[2] "A claim for unjust enrichment is based upon an implied contract." *Toulon,* 877 F.3d at 742. However, the only indicia of an implied-in-fact contract is in Plaintiff's response brief to the instant motion, and that is contrary to the "axiomatic rule" that a plaintiff cannot amend his complaint in a response brief. *Id*.